## No. 25-30201

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Medco Energi US, L.L.C.,

*Plaintiff - Appellant*

v.

Howard Cantor; Doug Burgum, Secretary, U.S. Department of the Interior,

*Defendants – Appellees*

**On Appeal from**
United States District Court for the Western District of Louisiana

2:23-CV-1755

## BRIEF OF APPELLANT MEDCO ENERGI US, L.L.C.

Scott A. O'Connor (La. Bar. No. 19723)
Anthony C. Marino (La. Bar. No. 17307)
Jefferson B. Goldman (La. Bar. No. 30523)
GORDON, ARATA, MONTGOMERY, BARNETT, MCCOLLAM, DUPLANTIS & EAGAN, LLC
201 St. Charles Avenue, 40th Floor
New Orleans, Louisiana 70170
Telephone: (504) 582-1111
Emails: soconnor@gamb.com
amarino@gamb.com
jgoldman@gamb.com
*Counsel for Medco Energi US LLC*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

### MEDCO ENERGI LLC
#### v.
**DOUGLAS BURGHUM**, in his official capacity as Secretary of the United States Department of the Interior, **and HOWARD CANTOR**, in his official capacity as Director of the Department of the Interior's Office of Natural Resources Revenue.

No. 25-30201

## In the UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

*/s/ Scott A. O'Connor*
Scott A. O'Connor
*Counsel for Medco Energi US LLC*

1) **Plaintiff-Appellant:**

Medco Energi US, LLC ("**Medco**") is a limited liability company with a sole member, Medco Energi USA, Inc. Medco Energi USA, Inc. is not publicly traded. Accordingly, there is no publicly held corporation owning ten percent (10%) or more of Medco Energi US, LLC.

2) **Other Parties Aligned with Plaintiff-Appellant:**

After filing its appeal to the ONRR, Medco transferred its assets relevant to this case, and its interest in the controversy, to Sanare Energy Partners, LLC

i

("**Sanare**"), which assumed responsibility in the administrative appeals from Medco. Subsequently, Sanare transferred the relevant assets and interest in the controversy to Greyhound Energy, LLC. This appeal has been continued by Medco pursuant to Fed. R. Civ. P. 25(c).

a.  Sanare Energy Partners, LLC is a limited liability company whose sole member is Stockbridge Natural Resources, LLC. Stockbridge Natural Resources, LLC is a limited liability company whose sole member is Apure Capital Partners, LLC. Apure Capital Partners, LLC is a limited liability company whose sole member is Oakridge Energy Partners, LLC. Oakridge Energy Partners, LLC is a limited liability company whose sole member is an individual named David Wiley. Accordingly, there is no publicly held corporation owning ten percent (10%) or more of Sanare Energy Partners, LLC or any of its parent companies.

b.  Greyhound Energy, LLC is a limited liability company with three members, each of which owns more than 10% of Greyhound:

   i.  Forward Path Energy, LLC, organized under the laws of Delaware. Its sole member is Rambler Energy, LLC, organized under the laws of Delaware. Rambler Energy, LLC's sole member is David Wiley, a dual Canadian and United States citizen, who resides in Florida.

ii.    Redwater Investments, LLC, organized under the laws of Texas, whose sole member is Charles Rougeau, who resides in Texas.

iii.    Hi Arc Ventures, LLC, organized under the laws of Delaware, whose sole member is Robert Cihra, who resides in New York.

Accordingly, there is no publicly held corporation owning ten percent (10%) or more of Greyhound Energy, LLC any of its parent companies.

**3) Defendants-Appellees:**

a.  Douglas Burghum, in his official capacity as Secretary of the United States Department of the Interior.

b.  Howard Cantor, in his official capacity as Director of the Department of the Interior's Office of Natural Resources Revenue.

**4) Counsel for Plaintiffs-Appellants:**

a.  Scott A. O'Connor, T.A. (La. Bar. No. 19723)

b.  Anthony C. Marino (La. Bar. No. 17307)

c.  Jefferson B. Goldman (La. Bar. No. 30523)

**5) Counsel for Defendants-Appellees:**

a.  Cynthia Lucille Taub, of the U.S. Department of Justice.

b.  Daniel Luecke, of the U.S. Department of Justice.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Medco Energi US, LLC requests oral argument.  This appeal involves the legality and propriety of facility inspection fee assessments by the Office of Natural Resources Revenue—acting on behalf of the United States Department of the Interior and the Bureau of Safety and Environmental Enforcement—for installations on the Outer Continental Shelf in the Gulf of America.  Among other things, Medco challenges the government's regulatory discretion to treat a group of installations that includes a central or primary installation with processing equipment and one or more secondary installations as separate facilities rather than a single facility for purposes of assessing inspection fees.  Resolution of the issue will affect not only the inspection fee assessments at issue in this case, but it also will bear on future inspection fee assessments that affect numerous other owners of OCS facilities.  The factual subject matter is technically detailed, the procedural history is lengthy and unusual, the interaction of regulations, statutes, and budget legislation is complex, and this appeal requires de novo review of the district court's Memorandum Ruling.  Therefore, Medco respectfully suggests that oral argument allowing the Court to hear from and ask questions of counsel for the parties will substantially help the Court to decide the case properly.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ......................................................... i

  1) Plaintiff-Appellant: ........................................................................................... i

  2) Other Parties Aligned with Plaintiff-Appellant: ............................................. ii

  3) Defendants-Appellees: .................................................................................... iii

  4) Counsel for Plaintiffs-Appellants: ................................................................. iii

  5) Counsel for Defendants-Appellees: ............................................................... iii

STATEMENT REGARDING ORAL ARGUMENT .............................................. iv

TABLE OF CONTENTS ........................................................................................ v

TABLE OF AUTHORITIES ................................................................................ viii

JURISDICTIONAL STATEMENT .........................................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ......................................2

  1. Whether BSEE misinterpreted and misapplied the definition of "Facility" in 30 C.F.R. § 250.105 in a manner that exceeded its discretion and whether the district court erred in deferring to BSEE's interpretation? .............................2

  2. Whether as a matter of law ONRR lacked the statutory authority to bill Medco for facility inspection fees for fiscal years 2017 and 2018 at the time ONRR issued the invoices in question because the 2017 and 2018 Continuing Resolutions on which ONRR relied did not grant ONRR the authority to collect inspection fees for those fiscal years? .................................................2

STATEMENT OF THE CASE..................................................................................3

  I. Description of the MP 64 Installations ...........................................................3

II.  ONRR's Assessments of Inspection Fees for MP 64 Installations..................4

III.  Procedural History.........................................................................6

    A.  The ONRR Director Denied Medco's Administrative Appeal................6

    B.  The IBLA First Granted Medco's Subsequent Appeal and Then Vacated Its Decision on ONRR's Request for Reconsideration.. .........................7

    C.  Medco Appealed to the District Court...................................................10

SUMMARY OF THE ARGUMENT .....................................................................11

I.  BSEE's Interpretation of the Definition of "Facility" in 30 C.F.R. § 250.105 Contradicts Its Plain Text.................................................................11

II.  ONRR's Statutory Authority to Assess Inspection Fees Lapsed Before It Issued the Demands to Medco. .........................................................13

ARGUMENT ...................................................................................14

I.  Standard of Review .........................................................................14

    A.  The Appellate Court Reviews the District Court's Decision in an Administrative Procedures Act Case *De Novo*......................................14

    B.  Agency Interpretations of Law Are Subject to Review *De Novo*. .........14

    C.  Agency Interpretations of Its Own Regulations Are Subject to a Complex Standard of Review Under Which a Court *May* Defer to an Agency's Interpretation of Its Own Regulations in Very Limited Circumstances.14

    D.  Summary of Standards of Review Applicable in the District Court. .....15

II.  The A, AQ Platform and 18 Satellite Caissons Are One "Facility" Under 30 C.F.R. § 250.105. .........................................................................15

    A.  As a Rule, 30 C.F.R. § 250.105's Definition of "Facility" Classifies Groups of Secondary Installations as a Single Facility .........................16

B.   BSEE's "Longstanding Practice" of Classifying Secondary Installations Without Interconnecting Walkways As Separate Facilities Improperly Negates a Material Part of the Definition of "Facility" in 30 C.F.R § 250.105.................................................................................................17

III.  Congress Had Not Reauthorized ONRR To Assess OCS Inspection Fees at the Time ONRR Sent the Demands to Medco. ............................................20

A.   Congress Passed Interim, "Continuing" Appropriations Bills for Fiscal Years 2017 and 2018. ............................................................................20

B.   When ONRR Issued the Demands, It Lacked the Statutory Authority to Do So. .......................................................................................................21

1. The DOI May Not Exceed the Statutory Authority Congress Granted It..............................................................................................................23

2. The 2017 and 2018 Continuing Acts Did Not Authorize the DOI and ONRR to Assess Inspection Fees.......................................................24

CONCLUSION ......................................................................................................28

CERTIFICATE OF SERVICE ...............................................................................30

CERTIFICATE OF COMPLIANCE ......................................................................30

## TABLE OF AUTHORITIES

**Cases**

*Associated Fisheries of Maine, Inc. v. Daley*, 127 F.3d 104, 109 (1st Cir. 1997) ...14

*Bank of America, N.A. v. F.D.I.C.*, 244 F.3d 1309, 1321 (11th Cir. 2001) .............25

*Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 674 (1st Cir. 1998*)* ..14

*Bus. Roundtable v. S.E.C.*, 905 F.2d 406, 417 (D.C. Cir. 1990) ............................25

*Chevron U.S.A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, 843, n. 9, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984) ............................................15

*Kerr-McGee Oil and Gas Corp. v. U.S. Department of Interior*, 554 F.3d 1082 (5th Cir. 2009) ..................................................................................................... 24, 28

*Kisor v. Wilkie*, 588 U.S. 558, 573-79 (2019). ............................................. 14-15, 19

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024) .................... 14-15

*Lyng v. Payne*, 476 U.S. 926, 937 (1986) ................................................................23

*New Mexico Health Connections v. United States Dep't of Health & Hum. Servs.*, 946 F.3d 1138, 1161–62 (10th Cir. 2019)............................................................14

*Pauley v. Bethenergy Mines*, 501 U.S. 680, 707 (1991) .........................................15

*Santa Fe Snyder Corp. v. Norton*, 385 F.3d 884 (5th Cir. 2004) ..................... 23, 28

**Statutes**

16 U.S.C. § 6809.......................................................................................................27

28 U.S.C. § 1291.........................................................................................................1

28 U.S.C. § 1331.........................................................................................................1

28 U.S.C. §§ 701-706..................................................................................................1

30 U.S.C. § 1724(h) .....................................................................................................9

43 U.S.C. § 1348(c) ....................................................................................................20

Pub. L. 113-6, 127 Stat. 198 (2013)..........................................................................26

Pub. L. No. 114-113, 129 Stat. 2242 (2015)....................................16, 21-22, 25-26

Pub. L. No. 114-223, 130 Stat. 857 (2016)...........................................21, 24-25, 27

Pub. L No. 115-31, 131 Stat. 135 (2017)................................................21-22, 25-26

Pub L. 115-56, (2017) ...........................................................................21-22, 25, 27

**Regulations**

30 C.F.R. § 250.105 ......................................................................... passim

30 C.F.R. §§ 250.130-33 ............................................................................16

## <u>JURISDICTIONAL STATEMENT</u>

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, as the appeal of a final decision of the United States District Court for the Western District of Louisiana.

The Plaintiff-Appellant originally filed this action in the district court, which had jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §§ 701-706, and timely appealed to this Court upon decision of the district court.

## **STATEMENT OF ISSUES PRESENTED FOR REVIEW**

This appeal deals with the assessment of inspection fees for facilities located on the Outer Continental Shelf ("**OCS**") in the Gulf of America by the Department of the Interior ("**DOI**").  DOI's agency the Bureau of Safety and Environmental Enforcement ("**BSEE**") conducts the inspections and DOI's agency the Office of Natural Resources Revenue ("**ONRR**") handles the billing of the inspection fees. Appellants challenge both ONRR's authority to bill the inspection fees at issue and BSEE's decision to classify the eighteen (18) secondary OCS installations at issue as separate facilities (and, thus, assess Medco with 18 more $17,000 inspection fees each year) rather than as a single facility in contravention of the clear and unambiguous definition of "Facility" in 30 C.F.R. § 250.105.  The issues presented on appeal are:

1. **Whether BSEE misinterpreted and misapplied the definition of "Facility" in 30 C.F.R. § 250.105 in a manner that exceeded its discretion, and whether the district court erred in deferring to BSEE's interpretation?**

2. **Whether as a matter of law ONRR lacked the statutory authority to bill Medco for facility inspection fees for fiscal years 2017 and 2018 at the time ONRR issued the invoices in question because the 2017 and 2018 Continuing Resolutions on which ONRR relied did not grant ONRR the authority to collect inspection fees for those fiscal years?**

## **STATEMENT OF THE CASE**

### I.    **Description of the MP 64 Installations**

Medco was the lessee of the MP 64 Unit, containing 21 installations (the "**MP64 Installations**") on the OCS in the Gulf of America.[1] Two central platforms connected by walkways house all of the measurement, processing, gathering, and similar equipment for the MP 64 Unit.[2] They are surrounded by 19 individual wells connected to the platforms via subsea flowlines.[3]  Each of the 19 wells is supported by a single, essentially identical caisson ("**Caisson**") that protrudes above the water and contains a small drive pipe and a small work deck for accessing the well it supports (photo below, left).[4] One of the 19 Caissons is connected to the central platforms by a walkway (this one Caisson and the central platforms are referred to

---

[1] Memorandum Ruling, ROA.489.
[2] Memorandum Ruling ROA.489-490.
[3] Memorandum Ruling ROA.490.
[4] Memorandum Ruling ROA.490.  The photo of the Caisson on the left has the A, AQ Platform in background, ROA.492.




in this matter collectively as the "**A, AQ Platform**", photo below, right);[5] the other 18 Caissons are not connected to the A, AQ Platform by walkways. None of the Caissons contains any measurement, processing, gathering or similar equipment; all measurement, processing, gathering, and similar functions for these wells take place at the A, AQ Platform. ONRR has not disputed that the 18 Caissons not connected to the A, AQ Platform by walkways are "satellite or secondary installations."

## II.     ONRR's Assessments of Inspection Fees for MP 64 Installations

On January 4, 2017, ONRR issued a bill to Medco for fiscal year 2017 inspection fees for the MP 64 Installations (the "**2017 Demand**").[6] On January 16, 2018, ONRR issued a bill to Medco for fiscal year 2018 inspection fees for the MP 64 Installations (the "**2018 Demand**"; collectively the 2017 Demand and 2018 Demand are the "**Demands**").[7] Each Demand assessed Medco a single facility inspection fee of $17,000 for the group of three installations interconnected with walkways, namely the A, AQ Platform (including the Caisson attached to it via walkway). Each Demand additionally assessed Medco a separate, $17,000 facility inspection fee for each of the 18 Caissons not connected to the A, AQ Platform by walkway, notwithstanding that all 18 are secondary installations. Thus, each

---

[5] ROA.489-490; *see supra,* nt. 4, for photo on right.
[6] 2017 Demand, ROA.45. ("The enclosed Invoice assesses you for fiscal year 2017 inspection fees"); ROA.47.
[7] 2018 Demand, ROA.51, 54.

Demand assessed Medco inspection fees totaling $323,000 for the MP 64 Installations.[8]

In determining the inspection fee assessments, BSEE relied on the definition of "Facility" contained in 30 C.F.R. § 250.105, which provides in relevant part:

> Any group of OCS installations interconnected with walkways, **or any group of installations that includes a central or primary installation with processing equipment and one or more satellite or secondary installations is a single facility**.  The Regional Supervisor may decide that the complexity of the individual installations justifies their classification as separate facilities.  (emphasis added)

According to the sworn declaration of BSEE's Regional Supervisor for District Field Operations, Michael Saucier, BSEE's "longstanding practice" is to categorize *all* "secondary or satellite installations … [that] rise above the waterline some distance from the primary facility without a walkway connection … [as] separate facilities, because the installation arrangement results in more complex, and time- and resource intensive inspections."[9]  Mr. Saucier concluded that BSEE had the discretion under 30 C.F.R. § 250.105 to classify the 18 Caissons that are not

---

[8] The Demands list 23 structures, identified by a "Complex ID" and with an itemized inspection fee for each.  ROA.47-49, 54-56.  Four of those are not subject to this appeal.  *See* ONRR Decision, ROA.62, 72; Memorandum Ruling, ROA.493.  A list of the MP64 Installations, described by Complex ID, may be found at Ex. 1 to the ONRR Decision, ROA.72.  Deduction of the inspection fees for the structures not at issue (Complex ID's 1836, 23057, 23361, and 31022) from the total invoiced amount leaves $323,000 in each Demand.  *See* invoice totals on Demands, ROA.49, 56.
[9] Declaration of Michael Saucier and exhibit referenced therein, attached to ONRR Opinion, ROA.71-76.

connected to the A, AQ Platform by walkways as separate facilities, and it acted accordingly as to the MP64 Installations.[10]

## III.    Procedural History

### A. The ONRR Director Denied Medco's Administrative Appeal.

Medco first appealed the Demands to the ONRR Director, who consolidated them, then granted them in part and denied them in relevant part (the "**ONRR Decision**").[11] The ONRR director determined that BSEE properly exercised its discretion to categorize Medco's 18 Caissons as separate "facilities."[12] The Director noted that where installations were not connected by a walkway, "a BSEE inspector is required to locate such structures and to take a boat to separately inspect each structure," which "results in a more complex, and time- and resource-intensive inspection and a separate inspection fee is warranted."[13] The Director found that characterization of the 18 Caissons as separate facilities was "consistent with BSEE's long-standing practice" and that BSEE's decision must be upheld.[14] In addition, the ONRR Director rejected Medco's argument that ONRR lacked authority to collect inspection fees for fiscal years 2017 and 2018, either because the Continuing Resolutions on which ONRR relied preserved its authority from prior

---

[10] ROA.75, ¶ 6.
[11] Memorandum Ruling, ROA.493; ONRR Decision, ROA.59.
[12] ONRR Decision, ROA.66-67.
[13] ONRR Decision, ROA.67.
[14] ONRR Decision, ROA.68.

fiscal years or because subsequent Consolidated Appropriations Acts "cured any such defect" by "specifically directing the Secretary to assess and collect the fees for fiscal years 2017 and 2018.[15]

### B. The IBLA First Granted Medco's Subsequent Appeal and Then Vacated Its Decision on ONRR's Request for Reconsideration.

Medco then appealed the ONRR Director's adverse rulings to the IBLA.  In its initial opinion (the "First IBLA Opinion"), the IBLA agreed with Medco and concluded that Congress had not authorized the DOI to collect inspection fees at the time the Demands were issued.[16]  It stated:

> ONRR argues that the continuing appropriations acts authorized the *"status quo,"* which allowed it to demand payment of inspection fees since the prior, consolidated appropriations acts directed the Secretary to collect annual fees for the fiscal year covered by each act.  But ONRR reads too much into the language of the continuing appropriations acts….
>
> [E]each of the prior consolidated appropriations acts directed the Secretary to collect inspection fees for facilities subject to inspection under the OCSLA *only for a single fiscal year….*  In these acts, **Congress expressly limited the Secretary's authority to collect inspection fees to a single fiscal year, and the continuing appropriations acts did not extend the Secretary's authority into the next fiscal year**.
>
> As Medco notes in its appeal, Congress could have provided authority to the Secretary to collect inspection fees in fiscal years 2017 and 2018 by including language in each of the applicable continuing appropriations acts specifically authorizing this action.  But Congress

---

[15] ONRR Decision, ROA.65-66.
[16] First IBLA Opinion, ROA.260-272.

did not do so.  Accordingly, **the continuing appropriations acts did not provide authority to the Secretary to collect the fees in ONRR's orders for fiscal years 2017 and 2018.  It was not until Congress enacted the consolidated appropriations acts for fiscal years 2017 (in May 2017) and 2018 (in March 2018) that it provided the Secretary with the authority to collect inspection fees for those fiscal years.**

...

Finally, the fact that the consolidated appropriations acts ultimately enacted by Congress for fiscal years 2017 and 2018 authorized the Secretary to collect inspection fees for those fiscal years does not compel a different result.  In his decision, the ONRR Director concluded that in the consolidated appropriations acts for fiscal years 2017 and 2018, "Congress cured" the lack of any specific authority for collecting inspection fees in the continuing appropriations acts.  **Those consolidated appropriations acts, however, did not operate retroactively to provide authority that did not exist at the time ONRR issued its orders to pay.  As the Supreme Court has explained, "retroactivity is not favored in the law" and "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."** And while ONRR could have "cured" its lack of authority by issuing new demands for payment once it had authority to collect inspection fees under each of the consolidated appropriations acts, it cannot simply rely on the later-enacted authority to sustain a decision made in the absence of that authority.[17]

After the DOI Solicitor lost before the IBLA, however, he took the irregular

step of issuing a memorandum to the rest of DOI declaring that the IBLA's opinion

in Medco's appeal was wrong (the "**M-Opinion**").[18]  The M-Opinion specifically

---

[17] IBLA Opinion, ROA.269-271 (*italics* in original; **bold** added).  The IBLA Opinion concluded: "Because we conclude that ONRR lacked authority at the time it issued its orders demanding payment of inspection fees for fiscal years 2017 and 2018, we reverse the ONRR Director's decision. We therefore need not address the other issues raised in this appeal." ROA.271.

[18] M-Opinion, M-37071 of October 12, 2021, ROA.273-282.

referenced and declared that the First IBLA Opinion was "an incorrect reading of applicable law [that] may not be relied upon be any member of the [DOI]." The M-Opinion also emphasized in its very first footnote that <u>the IBLA was prohibited from relying on the First IBLA Opinion</u>.[19] Then, two days after telling the IBLA who was in charge, the Solicitor moved the IBLA to reconsider its decision in light of the Solicitor's own M-Opinion.[20]

The IBLA obeyed.  Noting its subordinate position, it observed in a new opinion (the "**IBLA Second Opinion**") that the DOI Departmental Manual:

> [P]laces specific limitations on [the IBLA's] authority, expressly prohibiting [the IBLA] from "overrul[ing], modify[ing], or disregard[ing]" an M-Opinion.  The [Department Manual], however, places no similar limitation on the Solicitor's exercise of the Secretary's authority.  In addition, a 2001 M-Opinion reaffirmed that M-Opinions are binding on the Board.[21]

Therefore, the IBLA vacated the First IBLA Decision, while promising to issue a subsequent decision addressing the remaining arguments in Medco's appeal.[22] Instead the IBLA allowed Medco's appeal to languish for over a year until the IBLA lost jurisdiction under 30 U.S.C. § 1724(h) and dismissed the appeal (the "**IBLA Dismissal**").[23]

---

[19] M-Opinion, ROA.274; quoted by the district court at ROA.495.
[20] *See* IBLA Second Opinion, ROA.283-288, discussing the motion for reconsideration.
[21] IBLA Second Opinion, ROA.286.
[22] IBLA Second Opinion, ROA.288.
[23] IBLA Dismissal, ROA.289-290.

### C. Medco Appealed to the District Court.

The IBLA's loss of jurisdiction made the ONRR Decision the final agency decision, which is appealable under the Administrative Procedures Act. Therefore, Medco sought judicial review of DOI's final decision through a Complaint for Declaratory and Injunctive Relief filed in the United States District Court for the Western District of Louisiana. In that action, the Solicitor took the position that the records filed by both parties with the IBLA, including both sides' briefs, DOI's motion for reconsideration, the opinions of the IBLA, and the M-Opinion itself, are not properly part of the Administrative Record because only the ONRR Decision is appealable. Nevertheless, counsel for DOI agreed not to object to Medco citing and discussing the first IBLA Opinion, the M-Opinion, the Reconsideration Opinion, and the IBLA Dismissal.[24]

In its Memorandum Ruling on the parties' cross motions for summary judgment, the district court ruled against Medco and in favor of the federal defendants.[25] On February 26, 2025, the district court entered its Judgment dismissing Medco's claims with prejudice as well an associated Memorandum

---

[24] *See* discussion at ROA.239-240; *see* referenced documents at ROA.260-290; *see* discussion of same in the Memorandum Ruling, ROA.494, nt. 2.
[25] Memorandum Ruling, ROA.489-509.

Ruling.[26]  Medco timely filed its Notice of Appeal on March 28, 2025 of the district court's adverse Memorandum Ruling and Judgment.[27]

## SUMMARY OF THE ARGUMENT

### I.     BSEE's Interpretation of the Definition of "Facility" in 30 C.F.R. § 250.105 Contradicts Its Plain Text.

In relevant part, 30 C.F.R. § 250.105 explicitly states: "Any group of OCS installations interconnected with walkways, *or any group of installations that includes a central or primary installation with processing equipment and one or more satellite or secondary installations is a single facility*." (Emphasis added). BSEE does not challenge that Medco's 18 Caissons are secondary installations. Therefore, Medco asserts that its 18 Caissons, along with its A, AQ Platform and additional Caisson connected by walkway, should be categorized as a single facility pursuant to 30 C.F.R. § 250.105, subject to a single OCS inspection fee.

Medco acknowledges that BSEE's Regional Supervisor "may decide that the *complexity of the individual installations* justifies their classification as separate facilities." (Emphasis added).  However, the Administrative Record conclusively establishes that BSEE's Regional Supervisor has decided that *all* secondary installations without a walkway connection to the primary facility *per se* warrant

---

[26] Judgment, ROA.510.
[27] Notice of Appeal, ROA.511-512.

classification as separate facilities without regard to complexity of the individual installations:

> Where secondary or satellite installations are attached to the primary facility via subsea tiebacks, but the installations rise above the waterlines some distance from the primary facility without a walkway connection, BSEE considers these secondary or satellite structures to be separate facilities, because the installation arrangement results in more complex, and time- and resource-intensive inspections.[28]

This approach, which BSEE's Regional Supervisor contends "is consistent with BSEE's longstanding practice,"[29] guts the provision in 30 C.F.R. § 250.105 that "***any group of installations that includes a central or primary installation with processing equipment and one or more satellite or secondary installations is a single facility***." BSEE's Regional Supervisor improperly substituted "complexity of inspections" in place of "complexity of individual installations" in derogation of the plain text of 30 C.F.R. § 250.105. The district court likewise erred in interchanging "complexity of inspections" with "complexity of individual installations." Consequently, this Court should reverse the district court's judgment and require that BSEE categorize the MP64 Installations as a single facility.

---

[28] ONRR Decision, ROA.75-76 (Declaration of BSEE Regional Supervisor Michael J. Saucier, ¶ 7).

[29] ONRR Decision, ROA.76 (Declaration of BSEE Regional Supervisor Michael J. Saucier, ¶ 8-9).

**II.     ONRR's Statutory Authority to Assess Inspection Fees Lapsed Before It Issued the Demands to Medco.**

OCS inspection fees are reauthorized yearly by Congress for each fiscal year, but at the time ONRR issued the Demands, Congress had only passed the Continuing Acts, which do not mention OCS inspection fees or authorize ONRR to collect them in new fiscal years 2017 and 2018. Because ONRR may not exceed the specific authority granted by Congress, ONRR had no authority to collect OCS inspection fees in fiscal year 2017 or fiscal year 2018 when it demanded that Medco pay such inspection fees. Moreover, subsequent Consolidated Appropriations for fiscal years 2017 and 2018 did not "cure" ONRR's lack of authority because they are not retroactively applicable. The IBLA's First Opinion was entirely correct on these points, and the district court's judgment to the contrary is incorrect and should be reversed by this Court.

# ARGUMENT

## I.     Standard of Review

### A. The Appellate Court Reviews the District Court's Decision in an Administrative Procedures Act Case *De Novo*.

An appellate court in an APA case reviews the decision of a district court *de novo*, applying the same standard of review to the underlying agency decision that the district court should employ.[30]

### B. Agency Interpretations of Law Are Subject to Review *De Novo*.

Courts review an agency's interpretation of statute *de novo*.[31]

### C. Agency Interpretations of Its Own Regulations Are Subject to a Complex Standard of Review Under Which a Court *May* Defer to an Agency's Interpretation of Its Own Regulations in Very Limited Circumstances.

Courts should only defer to an agency's interpretation of its own regulations when those regulations are genuinely ambiguous, the agency's interpretation is reasonable, and the court concludes that Congress would have intended the court to defer to the agency in this particular context, among many additional restrictions set forth in *Kisor v. Wilkie*.[32]

---

[30] *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 674 (1st Cir. 1998*); New Mexico Health Connections v. United States Dep't of Health & Hum. Servs.*, 946 F.3d 1138, 1161–62 (10th Cir. 2019); *see Associated Fisheries of Maine, Inc. v. Daley*, 127 F.3d 104, 109 (1st Cir. 1997) (subjecting APA appeal to *de novo* review and observing that the appellate court's task in such a case is the same as that of the district court).

[31] *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024).

[32] 588 U.S. 558, 573-79 (2019).

### D. Summary of Standards of Review Applicable in the District Court.

The district court should have reviewed BSEE's interpretation of the definition of "Facility" contained 30 C.F.R. § 250.105 under an effectively *de novo* standard, using "all the traditional tools of construction"[33] and "carefully consider[ing] the text, structure, history, and purpose of a regulation, in all the ways it would if it had no agency to fall back on.[34] Only if the district court then concluded that the regulation was truly ambiguous should it have deferred to the BSEE's interpretation, and even then only if BSEE's interpretation falls "within the bounds of reasonable interpretation."[35]

The district court should have reviewed *de novo* whether the various granted ONRR legal authority to issue the Demands.[36]

### II.    The A, AQ Platform and 18 Satellite Caissons Are One "Facility" Under 30 C.F.R. § 250.105.

Not every structure on the OCS is subject to an annual inspection fee. A structure must (1) constitute a "facility"; (2) be located above the waterline; (3) be

---

[33] *Kisor v. Wilkie*, 588 U.S. 558, 575 (2019) (internal quotation marks omitted) (citing *Chevron U.S.A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, 843, n. 9, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984) as "adopting the same approach for ambiguous statutes").

[34] *Kisor v. Wilkie*, 588 U.S. 558, 575 (2019) (internal quotation marks omitted) (citing *Pauley v. Bethenergy Mines*, 501 U.S. 680, 707 (1991) (Scalia, J., dissenting)).

[35] *Kisor v. Wilkie*, 588 U.S. 558, 559 (1991).

[36] *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024).

in place at the start of the fiscal year covered by the inspection fee assessment; and (4) contain either a well or "processing equipment or gathering lines."[37]

### A. As a Rule, 30 C.F.R. § 250.105's Definition of "Facility" Classifies Groups of Secondary Installations as a Single Facility.

As previously noted, 30 C.F.R. § 250.105 (for purposes of BSEE's operation of the inspection program under 30 C.F.R. §§ 250.130-33) classifies a group including primary and secondary installations as "a single facility" regardless of any walkway connections.

> (1)     As used in § 250.130 ....  Any group of OCS installations interconnected with walkways, **or any group of installations that includes a central or primary installation with processing equipment and one or more satellite or secondary installations is a single facility**.  The Regional Supervisor may decide that the **complexity** of the individual installations justifies their classification as separate facilities.[38]

The DOI and its agencies ONRR and BSEE do not dispute that Medco's A, AQ Platform is the primary installation of the MP64 Installations or that the 19 Caissons are secondary installations, only one of which is connected by walkway to the A, AQ Platform.  Therefore, based on plain text of 30 C.F.R. § 250.105, Medco's MP64 Installations are a group of installations that by definition are a "single facility" subject to a $31,500 inspection fee *unless* the Regional Supervisor appropriately

---

[37] *See* 2016 Consolidated Appropriations Act, 129 Stat. at 2549; 2017 Consolidated Appropriations Act, 131 Stat. at 459. Inspection fees vary by facility.  Relevant here, qualifying facilities "with 1 to 10 wells" are subject to an inspection fee of $17,000 and qualifying facilities "with more than 10 wells" are subject to an inspection fee of $31,500.

[38] 30 C.F.R. § 250.105 (in pertinent part) (emphasis added).

decides that "the complexity of the individual installations justifies their classification as separate facilities."

### B. BSEE's "Longstanding Practice" of Classifying Secondary Installations Without Interconnecting Walkways As Separate Facilities Improperly Negates a Material Part of the Definition of "Facility" in 30 C.F.R § 250.105.

Both the ONRR Director and the district court relied exclusively on the sworn declaration of BSEE's Regional Supervisor for District Field Operations, Michael Saucier ("**Saucier Declaration**"), in deciding that BSEE's decision to classify the Medco's MP64 Installations as 19 separate facilities was not improper under 30 C.F.R. § 250.105.[39] Mr. Saucier states the following:

> Where secondary or satellite installations are attached to the primary facility via subsea tiebacks, but the installations rise above the waterline some distance from the primary facility **without a walkway connection**, BSEE considers these secondary or satellite structures to be separate facilities, because the installation arrangement **results in more complex, and time- and resource-intensive inspections**.

> In determining the number of Medco facilities in the Main Pass 64 lease block, pursuant to this longstanding practice, my staff and I decided that Medco's above- water secondary or satellite single-well caisson installations attached to its primary A, AQ facility only via subsea flowline, **and without a walkway**, are separate facilities.

> Characterization of such caissons as separate facilities is consistent with BSEE's longstanding practice.  Changing course on BSEE's

---

[39] The Saucier Declaration, along with its referenced exhibit, is found attached to the ONRR Opinion at ROA.71-76.  It is cited by the ONRR Opinion at ROA.66-68 and the Memorandum Ruling at ROA.503-504.

practice and this longstanding application of the regulations could have significant operational and financial impacts on BSEE.[40]

Mr. Saucier's sworn declaration demonstrates that BSEE adopted a practice that substantially deviates from the plain text of the applicable definition of "Facility" in 30 C.F.R. § 250.105. Rather than assessing on a case-by-case basis whether "the complexity of *individual* installations" justifies their classification as separate facilities, BSEE decided *in globo* that any secondary installation that is not connected by walkway to a primary installation shall *per se* be classified as a separate facility. Further, BSEE adopted its practice not because of "the complexity of *individual* installations," but because secondary installations without connecting walkways purportedly make ***inspections*** more complex and time- and resource intensive.

Medco submits that BSEE's practice, and the district court's deference to it, is completely at odds with the plain text of the applicable definition of "Facility" for several obvious reasons. First, 30 C.F.R. § 250.105's use of the disjunctive "or" makes clear that secondary installations need not be connected to a primary installation by walkways to be classified by definition as a single facility. Second, any OCS secondary installations necessarily will be "some distance" away from the primary installation and, therefore, require some form of transportation to reach.

---

[40] Saucier Declaration, ¶¶ 7-9, ROA.75-76 (emphasis added).

Just as BSEE drafted 30 C.F.R. § 250.105 to make connection by walkways a limiting factor in some respects, it also could have made proximity, numbers of secondary installations, and/or configurations of secondary installations limiting factors for their classification as a single facility, but it did not. Third, the provision "**or any group of installations that includes a central or primary installation with processing equipment and one or more satellite or secondary installations is a single facility**" simply cannot be given any effect without in some way making *inspections* more complex, and time- and resource intensive.

BSEE is bound by the plain language of its own regulations.[41] It lacks the authority or discretion to override material provisions of regulations for reasons of convenience or cost. Medco asserts that BSEE is not entitled to substitute a "complexity of inspection" standard in lieu of the "complexity of individual installations" criteria applicable in 30 C.F.R. § 250.105 that may in some cases allow its Regional Supervisor to reclassify secondary installations as separate facilities. Put differently, BSEE's practice must not be allowed to negate the rule.

For these reasons, this Court should reject BSEE's unreasonable interpretation of 30 C.F.R. § 250.105 and the district court's deference to it. Medco urges this Court to follow *Kisor v. Wilkie*, use ordinary tools of construction, and

---

[41] *Fina Oil & Chem. Co. v. Norton*, 332 F.3d 672, 673 (D.C. Cir. 2003); *Kathleen K. Rawlings et al.*, 137 IBLA 368, 372 (1997); *Cheyenne Resources, Inc.*, 87 Interior Dec. 110, 111 (1980).

give 30 C.F.R. § 250.105 its plain text unambiguous meaning.  Nothing contained in the administrative record would support a finding that BSEE reasonably justified its classification of the MP64 Installations as separate facilities based on "complexity of individual installations"[42] rather than by stating the obvious that its inspections will be more complex, costly and resource draining if its regulation is applied BSEE wrote it.  Thus, this Court should reject BSEE's reclassification of Medco's MP64 Installations as a single facility and hold that they are a single facility under 30 C.F.R. § 250.105 for which the maximum inspection fee in fiscal years 2017 and 2018 is $31,500 (if it does not additionally hold that ONRR lacked authority to issue the Demands as argued below).

### III.     Congress Had Not Reauthorized ONRR To Assess OCS Inspection Fees at the Time ONRR Sent the Demands to Medco.

#### A. Congress Passed Interim, "Continuing" Appropriations Bills for Fiscal Years 2017 and 2018.

Although inspections are authorized by statute,[43] fees for these inspections are reauthorized from (fiscal) year to year by Congress in appropriations bills.  On December 18, 2015, the President signed the Consolidated Appropriations Act, 2016 (the "**2016 Consolidated Act**"), which authorized funding for the 2016 federal year

---

[42] This point is illustrated by BSEE's classification of Medco's one Caisson connected by walkway to the A, AQ Platform as a three-installation "single facility".  Classifying Medco's other 18 identical Caissons as separate facilities because there are no walkway connections is arbitrary and contrary to the rule of 30 C.F.R. § 250.105.

[43] 43 U.S.C. § 1348(c).

(which ran from October 1, 2015 through September 30, 2016).[44] Congress failed to promptly pass a complete appropriations act for the 2017 fiscal year, and so enacted the "Continuing Appropriations… Act, 2017" (the "**2017 Continuing Act**"), which was signed on September 29, 2016.[45] Two-thirds of the way through Fiscal Year 2017, Congress passed the Consolidated Appropriations Act of 2017 (the "**2017 Consolidated Act**") for fiscal year 2017, which was signed on May 5, 2017.[46] Congress again failed to promptly pass a complete appropriations act for the 2018 fiscal year, and so enacted the "Continuing Appropriations Act, 2018…" (the "**2018 Continuing Act**"), which was signed September 8, 2017.[47]  (The 2016 and 2017 Consolidated Acts are referred to collectively as the "**Consolidated Acts**"; the 2017 and 2018 Continuing Acts are referred to collectively as the "**Continuing Acts**".)

### B. When ONRR Issued the Demands, It Lacked the Statutory Authority to Do So.

ONRR, an administrative agency, may only act within the bounds of its statutory authority.  The timeline of the relevant Acts and Demands is as follows.

**September 30, 2016-** Fiscal Year 2016 ends.  Authority under the 2016 Consolidated Act expires.[48]

**October 1, 2016-** Fiscal Year 2017 begins.  Authority under the 2017 Continuing Act begins.[49]

---

[44] Pub. L. No. 114-113, § 107, 129 Stat. 2242, 2549 (2015).
[45] Pub. L. No. 114-223, 130 Stat. 857 (2016).
[46] Pub. L No. 115-31, 131 Stat. 135 (2017).
[47] Pub L. 115-56, 131 Stat. 1129 (2017).
[48] 2016 Consolidated Act, § 5, 129 Stat. 2242, 2244 (2015).
[49] 2017 Consolidated Act, § 4, 130 Stat. 857, 857 (2016).

| | |
|---|---|
| **January 4, 2017**- | ONRR issues 2017 Demand.[50] |
| **May 5, 2017**- | President signs 2017 Consolidated Act. |
| **September 30, 2017**- | Fiscal Year 2017 ends. Authority under the 2017 Consolidated Act expires.[51] |
| **October 1, 2017**- | Fiscal Year 2018 begins. Authority under the 2018 Continuing Act begins.[52] |
| **December 8, 2017**- | Authority under the 2018 Continuing Act ends.[53] |
| **January 16, 2018**- | ONRR issues 2018 Demand.[54] |

To the extent ONRR claims that the Continuing Acts extended the authority from the Consolidated Acts, it still did not comply with the law. The Consolidated Acts require that ONRR issue the Demands "within 60 days".[55] What event begins this sixty-day clock is not stated, although the beginning of the relevant fiscal year or the signing of the act are obvious candidates. Regardless, both the beginnings of fiscal years 2017 and 2018 and the signing dates of both the Continuing Acts (September 29, 2016 and September 8, 2017) were more than 60 days before ONRR issued the relevant Demands.

---

[50] 2017 Demand, ROA.45-49.
[51] 2017 Consolidated Act, § 5, 131 Stat. 135, 137 (2017).
[52] 2018 Continuing Act, Division D, § 101, 131 Stat. 1129, 1139.
[53] 2018 Continuing Act, Division D, § 106(3), 131 Stat. 1129, 1139.
[54] 2018 Demand, ROA.51-56.
[55] 2016 Consolidated Act, § 107(d), 129 Stat. 2242, 2549 (2015); 2017 Consolidated Act, § 107(d), 131 Stat. 135, 459 (2017).

**1. The DOI May Not Exceed the Authority Congress Granted It.**

"[A]n agency's power is no greater than that delegated to it by Congress."[56] Courts have consistently recognized that an administrative agency may not read authorization into a statute when the language of the statute clearly does not provide for it. In *Santa Fe Snyder Corp. v. Norton*, the United States Court of Appeals for the Fifth Circuit addressed an analogous situation, in which the former Minerals Management Service ("**MMS**") exceeded its authority under the Deepwater Royalty Relief Act of 1995 ("RRA").[57] The terms of the RRA distinguished between leases in existence at the time of the RRA's enactment (existing leases) and leases created thereafter (new leases). The statute provided royalty relief for existing leases if the lessee could show that it would not be economic to generate new production without the relief. However, the statute did not impose such a requirement on new leases. Nevertheless, MMS issued regulations which effectively required the same showing for any new leases located in the same field as existing leases. The Fifth Circuit held that MMS's action clearly exceeded its authority: "Interior's regulation imposing a New Production Requirement on New Leases has no statutory support. Congress clearly imposed a New Production Requirement on Existing Leases. It did not do so for New Leases."[58]

---

[56] *Lyng v. Payne*, 476 U.S. 926, 937 (1986).
[57] 385 F.3d 884 (5th Cir. 2004).
[58] *Id*. at 892-93.

The Fifth Circuit reached a similar conclusion in *Kerr-McGee Oil and Gas Corp. v. U.S. Department of Interior*, where MMS attempted to impose price threshold requirements on new leases under the RRA.[59] In that case, the court noted that "[h]ad Congress intended to impose price thresholds on the royalty relief for these new leases, it certainly knew how to do so," pointing out that Congress had set such price thresholds for the existing leases.[60] The court therefore "refuse[d] Interior's invitation to read this . . . limitation into the statute."[61]

### 2. The 2017 and 2018 Continuing Acts Did Not Authorize the DOI and ONRR to Assess Inspection Fees.

The Demands cite the Continuing Acts as the sole source of authority for the OCS inspection fees assessed to Medco;[62] however, neither act contains any such grant of authority, and in fact neither even mentions assessment of inspection fees. The 2017 Continuing Act provides only for the appropriation of certain funds for certain purposes: "The **following sums** are hereby **appropriated**, out of any money in the Treasury not otherwise appropriated . . . for the several departments, agencies, corporations, and other organizational units of Government for fiscal year 2017, and for other purposes . . . ."[63] Like the RRA at issue in the cases cited above, the

---

[59] 554 F.3d 1082 (5th Cir. 2009).

[60] *Id.* at 1086.

[61] *Id.*

[62] 2017 Demand, ROA.45; 2018 Demand, ROA.51.

[63] 2017 Continuing Act, 130 Stat. 857, 908 (2016) (emphasis added).

Continuing Acts do not contain any authority for ONRR to assess inspection fees for fiscal years 2017 or 2018.

The 2017 Continuing Act carries forward the appropriation of funds authorized in the 2016 Consolidated Act.[64] However, the 2016 Consolidated Act directs the Secretary of the Interior to collect a one-time "annual fee" and states that such fee will be collected "[i]n fiscal year 2016", clearly limiting that authority to that year.[65] The 2018 Continuing Act is similar, as it carries forward the appropriation of funds authorized in the 2017 Consolidated Act, which authorizes collection of a one-time "annual fee" for "fiscal year 2017."[66] The 2017 Consolidated Act was not law at the time the inspection fees in the 2017 Demand were assessed or at the time that Medco perfected its appeal; similarly, the 2018 Consolidated Act was not a law at the time the inspection fees in the 2018 Demand were assessed or at the time that Medco perfected its appeal. Because those statutes did not yet exist, ONRR could not have relied on them in assessing the OCS inspection fees at issue.[67]

---

[64] 2017 Continuing Act, 130 Stat. 857, 908; 2016 Consolidated Act, 129 Stat. 2242, 2549 (2015).
[65] 2016 Consolidated Act, 129 Stat. 2242, 2549 (2015).
[66] 2018 Continuing Act, 131 Stat. 1129 (2017); 2017 Consolidated Act, 131 Stat. 135, 459 (2017).
[67] *See Bus. Roundtable v. S.E.C.*, 905 F.2d 406, 417 (D.C. Cir. 1990) ("We do not decide whether [an agency] could invoke other statutory provisions to provide the legal authority   The sections relied on here are insufficient."); *Bank of America, N.A. v. F.D.I.C.*, 244 F.3d 1309, 1321 (11th Cir. 2001) (stating that vacating an agency decision is the proper remedy when "the agency so fundamentally misunderstands the source of its authority (assuming it had any to begin with) that it purports to rely on the wrong statute").

The ONRR Decision glossed over its lack of statutory authority to issue the Demands.  Medco does not disagree that the overall purpose of the Continuing Acts was to maintain the *status quo* of authorized government funding and operations.  However, in the Consolidated Acts Congress chose to authorize only a one-time "annual fee" to be collected "[i]n fiscal year 2016," and similar for fiscal year 2017.[68]  The Continuing Acts authorize appropriations for ongoing programs out of existing funds, but they contain no authority for the assessment of inspection fees for the next fiscal year.  Congress could have authorized the inspection fees in a separate statute without a time limit.  It did not do so.  Congress also could have included additional language in the Continuing Acts, as it has done previously, to authorize ONRR to collect inspection fees for the next fiscal year.  For example, *The Consolidated and Further Continuing Appropriations Act*, *2013*, provided for appropriation of "[s]uch amounts as may be necessary ... and under the authority and conditions" of Appropriations Act 2012 and containing a separate provision that provides "[e]xcept as otherwise expressly provided in this division, the requirements, **authorities**, conditions, limitations, **and other provisions** of the appropriations Acts referred to . . . shall continue in effect through [September 30, 2013]."[69]

---

[68] 2016 Consolidated Act, § 107(a), 129 Stat. 2242, 2549 (2015); 2017 Consolidated Act, § 107(a), 131 Stat. 135, 459 (2017).
[69] Pub. L. 113-6 §§ 1101, 1105, 127 Stat. 198, 412-413 (2013) (emphasis added).

It could also have amended the previous Consolidated Acts to extend the authority, as it did in both the Continuing Acts, where it extended the sunset provision of the Federal Lands Recreation Enhancement Act.  Congress declared in the 2017 Continuing Act that the FLERA "is amended by striking 'September 30, 2017' and inserting 'September 30, 2018'";[70] it extended it again in the 2018 Continuing Act, declaring that FLERA "is amended by striking 'September 30, 2018' and inserting 'September 30, 2019'".[71]

Again, Congress did not include such language in the Continuing Acts. Precedent makes clear that had Congress wanted to include such language, it very well knew how to do so.  The clear and unambiguous language of the Continuing Acts, however, only appropriates money, and does not authorize the collection of the inspection fees for fiscal years 2017 and 2018.

The ONRR Decision recognized the weakness of the position that the Continuing Acts provided the required authority, and asserted without citation to authority the alternative that "even if ONRR lacked authority to issue the [Demands]," the subsequent passage of the Consolidated Acts "cured any such defect."[72] The Demands were sent long before the referenced Consolidated Acts

---

[70] 2017 Continuing Act, § 133, 130 Stat. 857, 914.

[71] 2018 Continuing Act, § 131, 131 Stat. 1129,1145 (2017) (amending 16 U.S.C. § 6809).

[72] ONRR Decision, ROA.65-66.

became law.[73] What the ONRR Decision refers to as "form over substance"[74] is actually substance. Both *Santa Fe Snyder Corp.*, which held that MMS exceeded its authority under the RRA in imposing a requirement on leases for which there was no statutory support,[75] and *Kerr-McGee Oil and Gas Corp.*, which held that "[h]ad Congress intended to impose [requirements] on leases, it certainly knew how to do so,"[76] are on point and applicable here.

In sum, the First IBLA Opinion nailed the analysis and reached the right conclusion that ONRR lacked authority to issue the Demands and that the subsequent Consolidated Acts did not cure the deficiency. Medco respectfully asks this Court to reach the same conclusion.

## CONCLUSION

BSEE lacks authority or discretion to reclassify Medco's MP64 Installations from a single facility under 30 § C.F.R. 250.105 to 19 separate facilities to increase its OCS inspection fee intake. Based on the plain and unambiguous text of 30 § C.F.R. 250.105, this Court should reject BSEE's blatant money-grab for exactly what it is—an unlawful overreach dependent on BSEE's striking "~~or any group of installations that includes a central or primary installation with processing~~

---

[73] *See supra* pp. 21-22 at nts.48-54 and accompanying text.
[74] ONRR Decision, ROA.68.
[75] 385 F.3d at 892-93.
[76] 554 F.3d at 1086.

~~equipment and one or more satellite or secondary installations is a single facility~~" from the applicable definition of "Facility" without any authority to do so. Accordingly, this Court should hold that Medco's MP64 Installations are a single facility under 30 § C.F.R. 250.105 and are subject to a maximum inspection fee of $31,500 for each of fiscal years 2017 and 2018.  Moreover, this Court also should hold, as did the First IBLA Opinion, that ONRR lacked authority to issue the Demands in the first place and, therefore, Medco owes no OCS inspection fees on MP64 Installations for fiscal years 2017 and 2018.

Respectfully Submitted,

 */s/ Scott A. O'Connor*
Scott A. O'Connor (La. Bar. No. 19723)
Anthony C. Marino (La. Bar. No. 17307)
Jefferson B. Goldman (La. Bar. No. 30523)
GORDON, ARATA, MONTGOMERY, BARNETT, MCCOLLAM, DUPLANTIS & EAGAN, LLC
201 St. Charles Avenue, 40th Floor
New Orleans, Louisiana 70170
Telephone: (504) 582-1111
Emails: soconnor@gamb.com
amarino@gamb.com
jgoldman@gamb.com
*Counsel for Medco Energi US LLC*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed and served on all counsel of record via the Court's ECF Filing System in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure on July 11, 2025.

*/s/ Scott A. O'Connor*_____
Scott A. O'Connor
*Counsel for Medco Energi US LLC*

## CERTIFICATE OF COMPLIANCE

This document complies with the page limit of FED. R. APP. P. 32(a)(7)(A) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1: this document contains 29 pages after those exclusions.

This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because:

this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14 point font, save for footnotes which are in 12 point font.

*/s/ Scott A. O'Connor*_____
Scott A. O'Connor
*Counsel for Medco Energi US LLC*